Ex parte Ramón Hernández Martínez, Petitioner and Appellant.

No. 9112.   Argued May 23, 1945.—Decided June 22, 1945.

*A. L. López* for appellant.

Mr. Chief Justice Travieso delivered the opinion of the court.

Ramón Hernández Martínez filed, in the District Court of Humacao, an *ex parte* petition praying that he and his twelve brothers and sisters be declared sole and universal intestate heirs of their mother, Francisca Martínez.

The evidence introduced in support of said petition established the following facts:

Gregorio Hernández Rodríguez, a native of Spain, came to Puerto Rico after having contracted marriage in Spain with Patricia Lacalle. While in Puerto Rico, Hernández had

sexual relations with Francisca Martínez, out of which the thirteen claimants to the inheritance herein were born. The names and dates of birth of those thirteen children are as follows:

Miguel Ramón, September 25, 1895
Francisco, July 12, 1897
Valentín, June 12, 1898
Adela, March 17, 1900
Gregorio, November 1, 1901
Petra, December 15, 1902
Modesto, February 25, 1904
Serafina, July 2, 1905
Florencio, April 5, 1907
Jorge, April 30, 1909
Nicolás, December 19, 1911
Mariano, May 11, 1913
Alfonso, July 23, 1915.

The marriage between Gregorio Hernández and Patricia Lacalle existed until May 13, 1926, when it was dissolved by a decree of divorce rendered by the District Court of Humacao. On September 19, 1926, divorcee Gregorio Hernández, and Francisca Martínez, single, contracted marriage, and in the marriage certificate they stated—

"That both contracting parties have cohabited as husband and wife and procreated the following children: (here follow the names and ages of the thirteen children), who are hereby acknowledged."

On October 17, 1944, the lower court entered an order declaring Petra, Modesto, Serafina, Florencio, and Jorge Hernández y Martínez to be legitimated children and universal heirs of Francisca Martínez. The petition was denied as to the remaining eight children. The petitioner thereupon appealed, and he urges that the lower court erred in construing the provisions of the Civil Code relating to the acknowledgment of natural children.

The grounds of the order appealed from are as follows:

1. The condition or status of a natural or illegitimate

child must be governed by the law in force at the time of its conception or birth, as the case may be. *(Núñez* v. *Lacot,* 32 P.R.R. 76; *Morales* v. *Heirs of Cerame,* 30 P.R.R. 784; *Ramírez* v. *Ramírez,* 30 P.R.R. 574.)

2. It having been proved that the petitioner and all of his brothers and sisters are the children of a married man and an unmarried woman, the condition or status of each of the children must be determined in the following manner:

(A) The first five children, born during the period from 1895 to November 1, 1901, are not natural children according to the definition set forth in § 119 of the Civil Code which was in force in Puerto Rico until June 30, 1902.

(B) The three children born during the period from December 1911 to July 1915, are not natural children, either, in accordance with the provisions of § 193 of the Civil Code then in force, which had become effective on March 9, 1911.

(C) That according to the above-cited legal provisions, which are identical in both codes, none of the aforesaid eight children could be considered as a natural child, nor as having been acknowledged or legitimated, since all of them were procreated and born out of wedlock, at a time when their parents could not have contracted marriage with each other because the father was married to Patricia Lacalle. Since those eight children were adulterous, they could not be legitimated by the subsequent marriage of their parents. (Manresa, vol. 1, p. 536; *Rivera* v. *Heirs of Díaz,* 36 P.R.R. 487.)

(D) The remaining five children, Petra, Modesto, Serafina, Florencio, and Jorge, were born during the period from December 15, 1902, to April 30, 1909, while the Civil Code, which became effective on July 1, 1902, was in force. According to § 180 of said Code, which provided that "illegitimate children are those born out of wedlock," and to § 193 which provided that "children born out of wedlock may be legitimatized by the subsequent marriage of their parents,

if under the law they may contract marriage, or in the manner authorized in this Code," the above-mentioned five children, illegitimate children of Francisca Martínez, were legitimated by the subsequent marriage of their parents, and, under § 194 of the same Code, have the same rights and duties as legitimate children.

The appellant maintains that the thirteen claimants herein are natural children of Francisca Martínez and have been acknowledged by her; that such fact was established by documentary evidence; that the statements made by the parents in the marriage certificate can not change the status of the claimants as natural children of Francisca Martínez which was acquired by them at birth; that the rule to the effect that the status of a natural or illegitimate child must be governed by the law in force at the time of its conception or birth has no application to the present case, for here we are dealing with the right of the natural children of Francisca Martínez to inherit from their mother, and the estate of the father is not involved.

It is not true, as claimed by the appellant, that the birth certificates introduced in evidence showed that all of the alleged heirs were registered as acknowledged natural children of Francisca Martínez. We have examined said certificates and we find that the first three children, Miguel Ramón, Francisco, and Valentín, and the seventh, Modesto, were registered as children born out of the civil marriage between Gregorio Hernández, native of Spain and resident of San Lorenzo, and Francisca Martínez, native and resident of San Lorenzo. All the remaining children were registered as natural children of Francisca Martínez.

From the evidence introduced by the petitioner himself, it appears that the thirteen claimants herein are the offspring of intimate relations (*relaciones amorosas*) which existed between Gregorio Hernández and Francisca Martínez; and that at the time of the conception or birth of each of the children, the parents could not have contracted marriage

with each other, for although the mother was single, the father was already married to Patricia Lacalle.

■■ The law applicable to the first five children, who were born during the period from September 25, 1895, to November 1, 1901, is the one set forth in §§ 119, 120, and 122 of the Civil Code, which was in force in Puerto Rico until June 30, 1902, and which provided as follows:

"Section 119.—Only natural children can be légitimated.

Natural children are those born out of wedlock of parents who, at the time of the conception of such children, could have married with or without dispensation."

"Section 120.—Legitimation may be effected:

1. By the subsequent marriage of the parents.

2. By royal concession."

"Section 122.—Those legitimated by a subsequent marriage shall enjoy the same rights as legitimate children."

The right of those first five children is based on their alleged legitimation by the marriage of their parents which took place in 1926. Commenting on § 119, *supra,* Manresa says:

"Marriage by itself renders legitimate only those children born in wedlock, even though they may have been conceived before marriage; and in order that it may legitimate those born before marriage, it is necessary that they hold the status of natural children and be acknowledged by the parents; so that only when both these requisites are present can the children be legitimated. Any other interpretation regarding the effect, *ipso jure,* of the subsequent marriage, . . . . . would be outside the terms of the law."

Since each of the aforesaid five children lacks the status of a natural child, it being the child of a married father and an unmarried mother who at the time of its conception could not have married, none of the children could have been legitimated by the subsequent marriage of the parents or otherwise.

■ The condition or status of the three children born during the period from December 19, 1911, to July 1915,

must be determined in accordance with the provisions of the Civil Code which went into effect on March 9, 1911. According to §§ 187 to 191 of said Code, only natural children were entitled to be legitimated by a subsequent marriage; and § 193 defined "natural children" as those born out of wedlock of parents who, at the time of the conception or birth of such children, could have married with or without dispensation. That same Section provided that a natural child might be acknowledged by the father and mother jointly or by either of them alone, either in the record of birth, in a will, or in some other public instrument.

The lower court did not err in holding that those three children, like the five first mentioned, were not and could not be legitimated by the subsequent marriage of the parents.

■ Could the petitioner and his brothers and sisters be, and were they in fact, acknowledged by the statements made by the parents or by the mother alone in the records of birth? This question must be answered in the negative, both as to the first five and as to the last three children, since all of them lack the status of natural children, without which neither the father nor the mother could lawfully acknowledge them, in accordance with the law in force at the time those children were born. Section 129, Spanish Civil Code; § 193, Civil Code of 1911.

■ What legal effect, if any, had the action of the mother in registering the first five children as her natural children?

Section 129 of the Spanish Code provided that "a natural child may be acknowledged by the father and mother jointly or by either of them alone." And § 130 provided as follows:

"In case the acknowledgment is made by only one of the parents, it shall be presumed that the child is a natural one if the parent acknowledging it was at the time of its conception legally competent to contract marriage."

At the time when, being unmarried and legally competent to contract marriage, Francisca Martínez registered as her

"natural children" Adela, born on March 17, 1900, and Gregorio, born on November 1, 1901, § 130 of the Spanish Civil Code, *supra,* was in force in this island.

In his comentaries on §§ 129 and 130, vol. 1, pp. 563–4, Manresa says:

"Construing Sec. 130, the Supreme Court, in a judgment rendered on June 9, 1893, has held that said Section does not define natural filiation but proceeding on the existence of the definition set forth in Sec. 119 and of the power granted by Sec. 129 to either of the parents to acknowledge, separately, a child who has that status, confines itself to declaring, as a logical consequence of said power, that the child thus acknowledged shall *be presumed* to be a natural one if the parent acknowledging it was at the time of the conception legally competent to contract marriage. This being so, the presumption may be overcome by proof to the contrary, and the Code expressly allows such impeachment by Sec. 138, which grants to any person whose interests are injuriously affected by the acknowledgment of the natural child, an effective remedy to overcome such presumption, not only where there has been a noncompliance with the provisions relating to the act of acknowledgment, but also where such acknowledgment has been made in favor of a child who may not be considered as a natural one under the terms of Sec. 119."

In the case at bar, the presumption which arose in favor of said children, as a result of the statements of the mother, was destroyed by the adverse evidence introduced by the petitioner himself which shows that each and all of the children were conceived and born at a time when the parents could not have legally married.

The pronouncement of the order appealed from regarding the remaining five children reads thus:

"Petra, who was born on December 15, 1902, Modesto, Serafina, Florencio, and Jorge, who were born during the period from that date to April 30, 1909, when the child last named was born, are illegitimate children of Francisca Martínez, and afterward they were legitimated by the subsequent marriage of their parents, Francisca Martínez and Gregorio Hernández Rodríguez, which took place in San Lorenzo on September 20, 1926, and in connection with which

the parents acknowledged the children born out of their intimate relations (*relaciones amorosas*)."

The legal provisions relied on for the foregoing pronouncement are those set forth in the Civil Code which went into effect on July 1, 1902, and continued in force until March 9, 1911. Section 180 of said Code defines "illegitimate children" as those "born out of wedlock," without making any distinction between an illegitimate child whose parents, at the time of its conception or birth, could not have legally married, one of them being already married, and a child whose parents were, at the time of its conception or birth, legally competent to contract marriage.

Section 193 of said Civil Code of 1902 provides:

"Children born out of wedlock may be legitimatized by the subsequent marriage of their parents, if under the law they may contract marriage, or in the manner authorized in this Code."

At first view, the above-quoted Section seems to provide that all children, whether natural or adulterous, born out of wedlock are legitimated by the subsequent marriage of their parents. If the lawmaker had stopped there, his intention would have been clearly expressed. However, he added the words "if under the law they may contract marriage," and it is those words which compel us to determine the intention of the lawmaker in drafting § 193 in the form already shown. Did the lawmaker refer to the legal capacity of the parents to marry at the time of the conception or birth of the child, or to their legal capacity to contract the subsequent marriage which is the basis or ground for the alleged legitimation?

In our opinion, what the lawmaker meant to state was that the subsequent marriage of the parents of the illegitimate children operates to legitimate said children if the parents, at the time of the birth of such children, could have married. In other words, the lawmaker intended to preserve the distinction between a natural child, born out of wedlock of parents legally competent to contract marriage, and an

adulterous child, born also out of wedlock but of parents who, at the time of the birth of the child, could not have contracted marriage because both or either of them was already married. That is the only logical interpretation which could be given to the words "if under the law they may contract marriage." It would be absurd to hold that the lawmaker referred to a subsequent marriage, inasmuch as it is obvious that if the latter were contracted in contravention of the law it would be void and no legitimation could arise therefrom.

The construction thus given to §§ 180 and 193, *supra*, finds support in the provisions of § 197 of the same Code, which reads thus:

"The declaration of legitimacy cannot be obtained if at the time the child was born the parents could not have contracted marriage under the provisions of this Code."

The lower court erred in holding that the five children above-mentioned had been legitimated by the subsequent marriage of their parents. However, the order appealed from, insofar as it declares heirs of Francisca Martínez her children Petra, Modesto, Serafina, Florencio, and Jorge, should be affirmed but for reasons other than those set forth by the lower court as grounds for its decision.

█ Section 187 of the Civil Code, which became effective on July 1, 1902, and which was in force at the time of the birth of each of said children, provided as follows:

"Illegitimate children may be recognized in any way by the father and the mother conjointly, or by either of them."

In accordance with the provisions of said Section, the action of Francisca Martínez in registering in the civil registry each of said five children as a "natural child of the registrant," operated to acknowledge the child thus registered as a natural child of Francisca Martínez, and, as such, entitled to share in the intestate inheritance left by the

mother pursuant to the provisions of § 191 of the same Code. See *Lucero* v. *Heirs of Vilá,* 17 P.R.R. 141.

We agree with the lower court that Act No. 229 of May 12, 1942, is not applicable to the facts and circumstances of this case, as said Act is of a prospective character. See *Correa* v. *Pizá,* 64 P.R.R. 938.

The order appealed from should be affirmed.